Judge, we are here today with a novel question that I often have in Mississippi, where the district courts are compelled to follow the Fifth District rulings of the United States Supreme Court. In this particular case, on summary judgment, we bring to the court that the judge has looked over or deleted facts or assumed facts that's just not in the record. It is nearly the entire pleading, Your Honor. The facts of when an injury occurred, the facts of Section 1983 that plaintiff or appellant believed that she covered, and the appeal, instead of going through all of those pages, we also want to bring to the court's attention that there were over 53 to 58 exhibits to prove what Ms. Spann was saying. Judge, it appears that the Honorable District Court did not consider the law of summary judgment, but instead began a weight of evidence, and even in weighing that evidence, Your Honor, that evidence was more favorable, again, those 53 to 58 pages of exhibits were more favorable to the plaintiff. We have no understanding why the court ruled the way, nor would we have expected . . . Excuse me, but the sheer number of pages of exhibits is really not helpful, but how would you like to point to the specific decisions made by the judge as it relates to the facts that support your position? Absolutely, Judge. You're asking me for specific facts, and one, that there was an adverse . . . we're going to have to jump around, Judge, because it really is the entire pleading, and we'll allow, or the court will allow the other side to state that side, but let's go to, like, was there an adverse employment action? Ms. Spann lost wages while she was out, but there again, the judge, as we pointed to, the district court was basing its ruling on an injury from 2021 when there was an injury also in 2023. The court seemed to have simply mixed those. Judge, there were . . . we're coming out of page 36 of the appeal. The records and the dates were wrong, Judge, that the district court used. Additionally, Ms. Spann has a permanent scar to her neck from two surgeries, and the court seemed to have mixed there again the 2021 injury with the 2023 injury, and we have doctor's reports. We won't take the time to show the court, but it is on the record, doctor's reports that clearly stated this was a new injury, the surgery injuries of 2023, Judge. I'm not sure, and I'm so nervous, if the court's expecting me to go through all of the errors, but they are pretty clear, and we tried to spell them out and judge what we also additionally said that under Title VII, but for the court, the district court making these errors, and these were noticeable errors, this was not a mishap. This was evidence that we put in the record. There is a policy, for instance, FedEx have. We have three different policies that were applicable to Ms. Spann. Can you help us? You were arguing that an injury occurred in 2023. I'm trying to figure out whether you filed your EEOC charge more than 180 days from the date of the forklift accident itself. The 2023 accident incident, Judge, that EEOC was filed timely. We showed that as well. Okay, so it's not related at all to the October 1st, 2021 incident, the charge? There is some reference, Judge, but it's only because the doctor said that 2021 that the doctors believe was gone was flared back up with the 2023. In 2023, that incident also triggered back 2023. What is the 2023 incident? Can you please explain that? I'm sorry, that's not clear to me. Judge, do you want me to turn to where she lifted something in this trailer, it was hit, and I believe another tractor hit the trailer she was in and caused her to have to have surgery to her neck and everything, Judge? We can turn to that. That's not from the forklift in 2021? No, Judge. This is a new . . . The 23 is not being hit. The 21, she got hit by an actual forklift. Yes. The person. 23 is a totally different incident. It did not . . . She did not get re-hit by a forklift. What happened in 2023? Judge, she was again moving something in the trailer and another truck. That trailer did not have an attachment truck trailer attached to it, but another truck hit that truck, causing her to be injured in that incident, Judge. I'll try to find it for you. That is a totally separate incident. I believe if we go to the doctor's report, that may help out what the court is doing. I've submitted the evidence of what happened, Judge. Do you agree that at least as to the forklift accident, that it was time barred? I'm sorry, Judge. I have a slight hearing issue. Do you agree that at least with regards to the forklift accident, that there was no EEOC charge filed timely? To the 2021. I will agree to that, Your Honor, but the flare-up is different. Okay. That's a new injury. You call it a flare-up. In your brief, you called it an extension of the pain from the forklift accident in 2021. That is exactly how I would say it, Judge, that it is an extension. The 2021 was all done with, healed with, and released to go back to work, but in 23, according to the doctor's report, this 23 incident flared back up. The 21, Judge. Okay. With the Title VII hostile work environment claim, why isn't that time barred? Judge, because the hostile working environment involves another employee that FedEx knew about that had a gun on the premises, threatened with a gun, plaintiff herself heard this threat of a gun. I'll go to my car and get my whatever, Judge. This hostile work environment, first of all, I need to jump back. There are a total of five women compared to 100 men on the job, so we know there might be some masculine camaraderie, but this would count over the top. There was cussing by employees around this person making her feel some sort of way of threatening. She reported those incidents to the managers of FedEx and nothing happened with it. Was that claim based upon discrimination, based upon race or gender? Gender, Judge. Gender, the hostile . . . Judge, that's gender, Judge, because she's one of the five of 100 men,  How did what you just related relate to her sex? Are we speaking of the cussing around?  The guns and all of that? Yes. As her gender, Judge, forgive me, but as a woman in an environment, mostly men, and in that sort of work environment, there's no heating and cooling or just fans in the ceiling. There are certain protections or warrants of those protections that should be expected because you only have five women, and that's not saying that all five were there when Ms. Fann was there. Ms. Fann, mostly, was the only woman there. The gun threats, the cursing out of supervisors, nothing happens. There at FedEx, we included it in this package as well, Your Honor, or in the brief. FedEx has policies for this type of behavior, and they simply did not follow their own policy even when the managers were told, we have an issue here. I feel for my life. This young lady has even stated that she was fearful for her life. We believe that policy that clearly says no profanity, no horsing around and all the other things that are in the policy, Judge. We won't take our time and go through that entire policy right now unless the court so desires. Judge, they violated their own policy. Obviously, to have such a policy, you must have the thought that someone could do these things, but when they had the knowledge that those things had been done from their supervisors, reporting it to the head person, nothing happened, and this young lady was subject to that. We believe, but for the court not erring looking over those items that we brought to the court's attention . . . Counsel, is your claim that the inappropriate or hostile conduct was directed to your client in particular or that it was just inappropriate and hostile to women, the five women who worked in that facility? Judge, we believe that was directed to my client in particular because my client as a woman is African American. The other person, the gun, let me speak specifically to the gun if I may. The other person is an African American male supervisor who told the head you got to do something about him. He keeps threatening with a gun, and the most they got a response was he's on medication and you know how that is. My client . . . Because talking of the gun around her, she felt that he could go . . . They could go to their cars right now, right? So she felt that he was directing that toward her, not the other men that were there. There were only two people right there. But anyone there would have heard what was being said? No. Not at that particular time, Judge. What I'm saying is the person that violated the rule was there and two other persons, one of which is my client. What other reason would he talk about a gun around . . . There were no other persons around, so it had to be there is what we're saying, Judge. That's how she perceived it. Even assuming that this is about sex, even assuming that, just for purposes of the argument today, this claim was not presented in the EEOC charge. The harassment, that the hostile work environment was not presented in the charge, was it? Judge, we did include the hostile work environment in . . . Are you looking at the actual charge that we attached as an exhibit? Letter 13. 13 turns right to you, Judge. Where does it say that there was a reference in the charge to a hostile work environment or facts that would suggest such a claim? Where is that in the charge? Judge, we will agree with the court that it's not specifically saying hostile work environment, but accordingly, now my recollection, Judge, we don't get these cases come before the court for a couple of years. There is no block. If you look above at Document 1-10, racist check, color, sex, but there is no block, if you will, Judge, is what we were saying, and I think that's what we are. Are there facts in the . . . if there's no block to check, are there facts articulated that said somebody pulled a gun on . . . because of my sex at work and the company failed to do anything? Is that in the charge? Yes, Judge. Not exactly how you . . .  I'm sorry. Specifically, those facts and the company's failure to act, allegedly, is that all in the charge as a hostile environment so that even if you . . . even if there's no blocks to check specifically, that there is the facts and the claim, it's clear that you're making the claim. Is that in there? Not in the . . . as the court just stated it, not in the EEOC of Document 1-10, but we did include it in the notice of claim, but we also, most importantly, included in the argument. Okay. Okay. You've saved time for rebuttal. Please. Thank you, Mr. Robinson, and so you have saved five minutes for rebuttal. Thank you, Your Honor. Thank you. We'll hear from . . . is it Mr. Prather or Prather?    Those aren't what they used to be. All right. May it please the court. I'm David Prather, counsel for FedEx for eight. We believe this case is straightforward. That Ms. Spann's appeal rests primarily on patently wrong interpretations of Fifth Circuit law, conclusory statements, and arguments not made before the district court. The district court correctly applied the relevant law to the undisputed facts before it, and summary judgment should be upheld. I want to start with plaintiff's forklift accident-related claims. The district court dismissed these claims on two grounds. The district court dismissed the Title VII claims for failure to timely file an EEOC charge, and it dismissed the Title VII and Section 1981 claims because Ms. Spann did not suffer an adverse employment action. The Fifth Circuit has long and repeatedly held that the limitations period starts running when a plaintiff knows of the discriminatory act and not when a plaintiff later perceives a discriminatory motive. Ms. Spann fails to acknowledge these cases, much less distinguish them. I believe here at oral argument today, she admitted that these claims were untimely. She also mentions a second accident. Would you mind addressing that please? Pardon me, Your Honor? You mentioned a second accident. Would you mind addressing that? Certainly. So the district court held that the forklift accident-related claims in 2021 were time-barred. The second accident, I believe is what she's claiming, formed the basis of the delayed light-duty claim. The district court never held that the delayed light-duty claim was untimely. So the second accident, in terms of the timeliness, really doesn't have anything to do with the timeliness of the first accident. Well, there was a question of whether or not she had reached her maximum recovery by that point. That impacted the reference for light-duty. Is that correct? Correct. So, as for the light-duty claim and the reason for the delay in the light-duty, the district court held that the sole basis for its decision was that she had not shown she was similarly situated to her alleged comparator, Donna Walters. FedEx for Eight has a policy that provides for light-duty work if the plaintiff had not reached MMI. So the district court held that the alleged comparator had not reached MMI and that this was immediately clear. Whereas to Ms. Spann's case, it was not quite clear whether she had reached MMI. If she had reached MMI, it was undisputed before the district court that she had reached MMI for her forklift-related accident. Plaintiff claims now for the first time, she never made this argument before the district court, that this was a new accident for which she had not reached MMI. The fact she states today about being in an accident where she was in a trailer and the trailer was hit and she was jarred, that occurred after the lawsuit was filed. I think she's misstating the facts. My understanding of the facts, and I wasn't even prepared to address this because this sort of comes out of the blue, but that she was reaching for something and flared up the shoulder injury that she suffered from the 2021 forklift accident. So FedEx Freight receives the light-duty request. It looks at the medical documentation they provided, and it wrestles with is she qualified for light-duty work here in accordance with the policy? Is this the new accident? Is this the old accident? There was some question on that. It went and reached out to the doctor to get more information, and after doing so, ultimately grants the light-duty request. How much delay was caused by that investigation? Eight business days. The request was made on January 17th, and it was ultimately granted on the 26th. It's really confusing to me because it sounded to me like there was some sort of argument that there's a Title VII claim arising out of the second accident, that there was a second accident, and that's the basis. That's not pleaded, is it? That's never been pleaded, no, Your Honor. I think the second accident only comes into play in terms of its relation to the light-duty delay. To the light-duty point, which has to do with the comparator. Correct. And not on timeliness at all. Correct. Okay. And as the district court properly ruled, the uncertainty or the lack of clarity regarding what was the nature of this injury that resulted in her delay was not present for her alleged comparator. It was immediately clear that she had not reached MMI for her accident and that she was eligible for light-duty work. Did she receive workers' compensation during the intervening period of time? She did. Can you discuss the claim about the gun and all of that and whether that's time barred? Well, the claim about the gun, we feel that we . . . she didn't exhaust her administrative remedies because she didn't allege it as part of . . . It's not part of the EEOC charge, so it's barred. It's barred for failure to allege it, not necessarily . . . And you're raising that. Yes. We raised that on appeal and before the district court. And as the panel's questioning alluded to, it's not race or sex-based. If somebody comes in and alleges that they're going to bring a gun into the workforce, that presents an equal danger to all employees, male and female, and although she claims that she heard the comment and tried to refute it, there's no evidence that it was directed at her or that he said, I'm going to shoot you. He just said, I'm going to bring a gun into the workplace. And in fact, she argued that it was made in front of two people, both a male supervisor and to Ms. Spann. I want to turn further to her harassment claims. The district court correctly dismissed her hostile environment claims because she failed to allege a hostile environment, and we've covered that, and that there was no evidence of a race or sex-based hostile environment. I think it's important to note here that Ms. Spann's brief admits that she's not claiming a hostile environment based on race or sex. She states in her brief that appellant claimed hostile work environment, not sexually or race. There are absolutely no sexually discrimination claims in this suit, and the law cited by plaintiff did not state that the hostile work environment had to be sexually or racially motivated. She further states later that, again, it is not certain why the court opined about sexual environment. No such claims are made, and the law for hostile environment does not include an element for racial or sexual discrimination. To the contrary, it's a prima facie part of the case, and she admits that she's not alleging that prima facie part of the case. She's conceding it, and the district court's decision should be upheld on that ground alone. And if you look at all the other allegations she's made regarding her claimed hostile work environment, none of them are sex or race-based, whether it's the gun comment, whether it is male employees. She describes it, male employees yelling at other male employees, hostility among male employees. This is men being hostile to men. And I think the idea that she felt threatened, she was discriminated, particularly even though it was equally applicable to men and women, that she was more offended by this because she's a woman, I think reads into Title VII something that's not there, and that is that women are the fairer, more delicate sex. And it just dawned on me during argument, and I can't cite to the case, but I believe there's a well-known Fifth Circuit case where it is held that women are not held to a standard of Victorian reticence, I believe was the quote. And so I don't think there's any support in Title VII. She is not alleged to have a hostile work environment based on sex, and she admits that she doesn't. Do you have anything else? Pardon me, Your Honor? Do you have any other arguments? No, I will rest on that, Your Honor. Just to state in conclusion, the district court applied the correct law to the undisputed facts and correctly awarded summary judgment. Thank you. We have your argument in your brief. Ms. Robinson, you've saved time for rebuttal. So please, Court, Your Honor. Yes. Judge, the document 13 is the doctor's, we're going to start there, is the doctor's report dated 1-17-2023, and it clearly says this is a new injury that Ms. Spann has. So we want to make that. I was trying to find it while the court was asking the questions. More importantly, Judge, on the sex discrimination, let me assure the court we're saying, as we wrote in the pleading, we're speaking of there is no sexual harassment. One would assume a woman amongst all of the men, perhaps there was sexual harassment. We're not saying that she wasn't sexually discriminated because she's a female. That is what we're saying, I'm sorry. Not harassed for sex. So we want to make that distinction. Under the gentleman just spoke about that Ms. Spann, essentially what he's saying is she's not in a protective class. She is in a protective class. He said he was trying to think of what law that he had read, a case law. But that case law, he didn't cite it. However, Ms. Spann is in a protective class, Your Honor. She had the right to expect on the hostile work environment to be protected. So it can't be just blown off as just horseplay at work. And even if it was horseplay, the word horseplay is specifically in FedEx's policy. So the new injury of 2023 was not recognized by the district court. And according to the law we cited, Judge, we'll let the court see it, and the appeal brief is that if there are two conflicting, all the other side FedEx just stood up here and showed the court, there are conflicting disputable evidence that he's saying and that we're saying. That alone pursuant to the Fifth Circuit deserves the right to go back and have this matter litigated before a jury. That's all we're asking for. There is enough facts that the judge did not have to weigh the evidence. There are constitutional section 1983 that's found in the complaint as well as we brought up again on appeal. We did not write the word or she did not hostile work environment, but she did describe it. So they had on notice that that element was their judge. There is enough evidence for the court if the court reviews or when the court reviews the record as well as the evidence that we submitted from the doctors, from FedEx's policy. They can't be just given a pass when they wrote the policy. They didn't have to put these things that we're claiming in the policy. It just so happens these facts that Ms. Spann is claiming aligns with their violations of their own policy and their own management had meetings, e-mails. All of this is a test. Saying that the ethics or the harm done to Ms. Spann is plausible. If it's plausible, she should have an opportunity, Judge. It's all we're asking to present it to a jury. We understand the court knows the laws. We believe that our pleading shows that we are within the laws of the Fifth Circuit. We have nothing else to rely on and we believe the evidence shows, Judge. Thank you. Thank you, Ms. Robinson. We have your argument and the case is hereby submitted. Thank you. Thank you. Thank you.